UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 12, 2015

LETTER TO PLAINTIFF AND COUNSEL:

    RE:    *Angela Lynn Ingrodi v. Commissioner, Social Security Administration*;
            Civil No. SAG-13-3283

Dear Ms. Ingrodi and Counsel:

    On November 4, 2013, the Plaintiff, Angela Lynn Ingrodi, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the Commissioner's Motion for Summary Judgment and the information and letters filed by Ms. Ingrodi, who appears *pro se*. (ECF Nos. 19, 20, 22, 24). I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. § 405(g); *see Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion. This letter explains my rationale.

    Ms. Ingrodi filed her claim on August 5, 2011, alleging disability beginning on July 1, 2011. (Tr. 148-49). Her claim was denied initially on February 27, 2012, and on reconsideration on July 17, 2012. (Tr. 80-83, 89-91). A hearing, at which Ms. Ingrodi was represented by counsel, was held on May 21, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 26-57). Following the hearing, on May 31, 2013, the ALJ determined that Ms. Ingrodi was not disabled during the relevant time frame. (Tr. 7-25). The Appeals Council denied Ms. Ingrodi's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

    The ALJ found that during the relevant time period, Ms. Ingrodi suffered from the severe impairments of "back impairment (lumbago/sciatica status post surgery), endometriosis status post laparoscopy, hypertension, and obesity." (Tr. 12). Despite these impairments, the ALJ determined that Ms. Ingrodi retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except she can frequently balance but only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; stoop; kneel; crouch; and crawl.

(Tr. 15-16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Ingrodi could perform her past relevant work as a retail shift supervisor/assistant manager and other jobs that exist in significant numbers in the national economy, and that she

*Angela Lynn Ingrodi v. Commissioner, Social Security Administration*
Civil No. SAG-13-3283
January 12, 2015
Page 2

was therefore not disabled during the relevant time frame. (Tr. 19-20).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ ruled in Ms. Ingrodi's favor at step one, finding that she had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). The ALJ's sequential evaluation appears to address, at step two, each of the impairments Ms. Ingrodi suffered during the relevant time frame. As noted above, the ALJ concluded that several of Ms. Ingrodi's impairments were severe. Moreover, the ALJ considered Ms. Ingrodi's migraine headaches, kidney stones and removal, history of left knee surgery, and remote carpal tunnel status post surgery, and found them to be non-severe. *Id.* Finally, the ALJ used the special technique applicable to mental impairments to evaluate Ms. Ingrodi's depression/dysthymia. (Tr. 13-14). In applying that technique, the ALJ found no limitation in activities of daily living, social functioning, and concentration, persistence, or pace. *Id.* The ALJ cited to the mental consultative examination in February 2012 and to other medical records, in addition to Ms. Ingrodi's own statements in various filings, to support the conclusions regarding mental limitations. *Id.* After finding at least one severe impairment, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Ingrodi's ability to work. *See* 20 C.F.R. § 404.1523. Accordingly, I find no basis for remand.

At step three, the ALJ determined that Ms. Ingrodi's impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 15). The ALJ considered the specific requirements of Listing 1.04, which relates to back impairments, Listings 4.02 and 4.04, which govern the cardiovascular system, and Listing 6.00, which pertains to genitourinary disorders including endometriosis. *Id.* I agree that no listings are met, and that no medical source has opined that Ms. Ingrodi's impairments meet any listing.

In considering Ms. Ingrodi's RFC, the ALJ summarized Ms. Ingrodi's subjective complaints. (Tr. 16). The ALJ also reviewed the medical records, noting that Ms. Ingrodi went on vacation on or about the time of the onset date, continued working for several months after the onset date, had a largely normal consultative examination in February 2012, had treatment notes showing that she was "doing well and without complaints," and had no treatment between December 2012 and May 2013. (Tr. 16-18). Moreover, the ALJ made an adverse credibility assessment, finding that Ms. Ingrodi had provided inconsistent information regarding her last vacations and regarding her last employment. (Tr. 18). The ALJ also noted that Ms. Ingrodi had applied for, and received, unemployment benefits until January 2013, therefore necessarily representing that she was ready, willing, and able to work. *See, e.g., Guthrie v. Coleman*, No.

4:13-cv-57-FL, 2014 WL 2575318, at *6 (E.D.N.C. June 9, 2014) ("An application for unemployment benefits is one of many factors for an ALJ to consider in making a claimant's credibility determination.") (citing Memorandum of Chief Administrative Law Judge Frank A. Cristaudo, August 9, 2010, R.250 ("application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence.")). Finally, the ALJ relied upon the opinions of the non-examining State agency physicians and the reports of the consultative examiners in assessing Ms. Ingrodi's RFC. (Tr. 18-19). In sum, as the ALJ stated, he relied upon "the lack of significantly adverse objective findings, her inconsistent statements, and the essentially routine and conservative nature of the treatment she received" to reach his conclusions. (Tr. 19).

My review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Ingrodi's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, I find the ALJ's RFC determination was supported by substantial evidence.

Next, at step four, the ALJ considered Ms. Ingrodi's ability to do her past relevant work as a retail shift supervisor/assistant manager. The VE testified that, given the RFC determined by the ALJ, Ms. Ingrodi could perform her past relevant work as of May 31, 2013.[1] It should be noted that the determination that Ms. Ingrodi was physically capable of performing her past relevant work did not mean to suggest that her former employer would hire her back directly into a supervisory position. The Fourth Circuit has previously explained that step four simply considers whether a claimant can "still do *the kind of work* which he did in the past." *Pass v.*

---

[1] In her latest court filing, Ms. Ingrodi included a sizeable number of medical records from 2014, a form evidencing that her husband took medical leave from his job to care for her in 2014, and letters from family members dated December 30, 2014. [ECF No. 24]. Those records suggest, as Ms. Ingrodi stated, that her back issues "have worsened drastically." [ECF No. 24 at 2]. *See also* Letter from Katherine L. Hoopengarner ("Her medical problems have deteriorated drastically just in the past year."); Letter from Nicholas Ingrodi (noting that his wife "has spent the past 8 months sleeping on the couch on the first floor."). Ms. Ingrodi cites, in part, the relevant standard for a sentence six remand for new and material evidence, noting that the new evidence has come to light and was not available at the time of the initial proceeding. However, importantly, a reviewing court must find that four prerequisites are met before a case can be remanded to the Commissioner on the basis of new evidence: "(1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court." *See Blair ex rel. J.D.S. v. Astrue*, Civil No. 1-10cv-1476-RMG-JDA, 2012 WL 1016633, at *4 (D.S.C. Feb. 29, 2012) (*citing Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)); 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (superseded by amendment to statute, 42 U.S.C. § 405(g), as recognized in *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991)). In this case, because all of the evidence submitted by Ms. Ingrodi relates to a time post-dating the ALJ's opinion, the first prerequisite has not been met, and a sentence six remand would be inappropriate. The records submitted by Ms. Ingrodi would be relevant only to a subsequent claim for benefits, which could consider the time frame incorporating 2014.

*Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995) (emphasis in original); *see* 20 C.F.R. 416.920(e). The court in *Pass* emphasized that consideration of either "the continued existence of past work" or "the ability of the claimant to obtain such work" are notably absent from the step four consideration. *Pass*, 65 F.3d at 1204. The step four inquiry is a "gauge by which to measure the physical and mental capabilities of an individual and the activities that he or she is able to perform, rather than a means by which to assure that the claimant can actually find employment." *Id.*

The ALJ also made alternative findings at step five, by considering the impact of Ms. Ingrodi's age and level of education on her ability to adjust to work. (Tr. 19-20). Relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ correctly found that an individual of Ms. Ingrodi's age, education, work experience, and a light RFC is not considered disabled *per se*. (Tr. 19-20). Since Ms. Ingrodi's RFC assessment contained additional non-exertional limitations, the ALJ asked the VE whether jobs existed in the national economy that were suited to Ms. Ingrodi's particular assessment. (Tr. 50). The VE testified that, in addition to past relevant work, a person with Ms. Ingrodi's RFC would be capable of performing other managerial positions, a front office cashier or supervisor cashier, or a sales attendant, in addition to other light work. (Tr. 50-51). Based on the VE's testimony, the ALJ concluded that Ms. Ingrodi was capable of successfully adjusting to work that exists in significant numbers in the national economy. (Tr. 20). I therefore find that the ALJ's determination was supported by substantial evidence.

For the reasons set forth herein, the Commissioner's Motion for Summary Judgment (ECF No. 17) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge